JPL/TJT:PJC
F. #2021R00440

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

LINZHE KONG,
    also known as "Justin,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 24-148 (ARR)
(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1),
1349 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

THE UNITED STATES CHARGES:

INTRODUCTION

       At all times relevant to this Information, unless otherwise indicated:

I.    Background

    A.    Medicare and Medicaid

        1.    Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicare Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare.

        3.    Medicaid was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and

certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including New York State. Individuals who received benefits under Medicaid were referred to as "recipients."

4.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.

5.      In New York State, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through Medicaid Managed Care plans, which were administered by private insurance companies that were paid by Medicaid.

6.      As part of their insurance benefits, some Medicare beneficiaries and Medicaid recipients received a certain amount of credit per month that could be spent on eligible over-the-counter ("OTC") non-prescription items such as analgesics, diabetes supplies, antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical equipment and other items. OTC money could not be spent on items such as cosmetics, hair care products, dry-skin lotions and perfumes. The monthly OTC credit was pre-loaded onto debit cards known as "over-the-counter cards" or "OTC Cards," which were issued to recipients by the plan sponsors. Any funds that were not used by the end of the month were forfeited, and the OTC Cards were reloaded each month with refreshed funds. Pharmacies generally dispensed OTC benefits to Medicare beneficiaries and Medicaid recipients by swiping the OTC Cards through an electronic payment system that debited the cost of approved OTC items.

7.  Medicare, Medicaid and Medicaid Managed Care plans (collectively the "Plans") were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347.

8.  Medical providers were required to enroll with Medicare and Medicaid in order to submit claims for reimbursement to the Plans. Claims were typically submitted electronically and identified the service or good provided to the patient.

9.  By submitting a claim to the Plans, a provider certified, among other things, that the services were rendered to the patient, were medically necessary and were not procured as a result of kickbacks or bribes.

B.  <u>The Defendant and Relevant Entities and Individuals</u>

10. The defendant LINZHE KONG, also known as "Justin," was an employee of Elmcare Pharmacy Inc. ("Elmcare") and a part owner and manager of NY Elm Pharmacy ("NY Elm").

11. Elmcare was a retail pharmacy located in Flushing, New York

12. NY Elm was a retail pharmacy located in Flushing, New York.

13. Co-conspirator-1, an individual whose identity is known to the United States, was an Elmcare and NY Elm employee.

14. Medical Practice-1, an entity the identity of which is known to the United States, was a medical practice in Flushing, New York.

15. Individual-1, an individual whose identity is known to the United States, was enrolled as a Medicare beneficiary and Medicaid recipient and filled prescriptions at Elmcare and NY Elm.

4

II.    **The Health Care Fraud Conspiracy**

16.    In or about and between September 2015 and December 2022, the defendant LINZHE KONG, together with others, agreed to execute and executed a scheme to defraud Medicare and Medicaid by paying kickbacks and bribes to Medicare beneficiaries and Medicaid recipients to induce them to allow Elmcare and NY Elm to bill for medically unnecessary prescription medications.

17.    As part of the scheme, the defendant LINZHE KONG directed Elmcare and NY Elm employees, including Co-conspirator-1, to offer supermarket gift certificates to all Medicare beneficiaries and Medicaid recipients who filled prescriptions at Elmcare and NY Elm, and billed the Plans for OTC items that were not actually dispensed, instead providing the equivalent value in cash.  Elmcare and NY Elm employees, including Co-conspirator-1, also referred Medicare beneficiaries and Medicaid recipients, including Individual-1, to Medical Practice-1 where they were prescribed medically unnecessary topical medications and pain patches to be filled at Elmcare and NY Elm.

18.    In or about and between September 2015 and December 2022, Medicare paid Elmcare and NY Elm approximately $23.8 million, and Medicaid paid Elmcare and NY Elm approximately $55,000, for prescriptions that were medically unnecessary and induced by the payment of illegal kickbacks and bribes.

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

19.    The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20.    In or about and between September 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant LINZHE KONG, also known as "Justin," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare and Medicaid, which are health care benefit programs as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

21.  The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

22.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))


*By Carolyn Pokorny, Assistant U.S. Attorney*
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


*Glenn S. Leon/PJC*
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE